■ In the Matter of RITA EGAN, Petitioner, v BARBARA A. DeBUONO, as Commissioner of New York State Department of Health, et al., Respondents. [688 NYS2d 18] —Determination of respondent Commissioner of the New York State Department of Health, dated February 23, 1998, which affirmed the determination of the New York City Department of Social Services that petitioner is no longer eligible for 24-hour in-home personal care services, unanimously confirmed, the petition denied and the proceeding pursuant to CPLR article 78 (transferred to this Court by order of the Supreme Court, New York County [Beverly Cohen, J.], entered July 23, 1998), dismissed, without costs.

The determination that petitioner, who suffers from bipolar disorder, was no longer eligible to receive 24-hour in-home personal care services under 18 NYCRR 505.14 is supported by substantial evidence. While petitioner's physician recommended continuation of personal services, the amount of such services "is not determined solely by the treating physician, but rather by the social services official 'with the advice of a physician' (Social Services Law § 365-a [1]), in conjunction with assessments performed by the local social services department (18 NYCRR 505.14 [b] [2])" (Kuppersmith v Dowling, 246 AD2d 473, 474, lv granted 92 NY2d 914). Moreover, "personal care services assessments 'involve more than medical determinations, and a social services agency is entitled to rely upon the views of its personnel, even in the face of conflicting medical evidence' ". (Matter of Marion v Balch, 252 AD2d 915, 917, quoting Kuppersmith v Dowling, supra, at 474). Contrary to petitioner's assertion, the City did not render its final determination to terminate personal care services exclusively on the recommendation of the admissions nurse, who neither visited nor examined petitioner. Since there was a disagreement between the physician's order and the nursing and fiscal assessments, pursuant to regulation, the local medical director independently reviewed the physician's order and other assessments before making a final determination as to the level and amount of care to be provided (18 NYCRR 505.14 [b] [4] [i] [a]; [ii]). Furthermore, all assessments, except for nursing, were based upon a personal visit with petitioner.

Petitioner also argues that respondents did not consider her medical case history, including her hospital records, as required by 18 NYCRR 505.14 (b) (2) (vi); (3) (vi) (f) (4) and Social Ser-

vices Law § 367-k (1) (d) (iv), and that such review was fundamental in determining the potential effects of placement in a nursing home. While it appears that the City did not consider petitioner's medical case history, her case history was presented at the fair hearing and was reviewed by the State before it issued its determination, as evidenced by the reference to the physicians' affidavits and the hospital records in its determination.

Nor is there merit to petitioner's claims that the form filled out by her physician to describe the potential impact of institutionalization violated the relevant regulations and law by limiting her doctor's comments to whether her activities of daily living would diminish if placed in a nursing home, and that the procedures utilized for determining eligibility for continued personal care services under 18 NYCRR 505.14 (b) (3) (vi) (f) (4) violated due process. The form completed by petitioner's physician did not limit her consideration of nursing home placement to diminishment of petitioner's activities of daily living since it permitted additional comments to be made, if required, on an attachment. As for petitioner's due process claims, respondents did not rely exclusively on the recommendation of the admissions nurse to make its determination, and while the admissions nurse did not state the bases for her findings, the determination of the local medical director did. Finally, petitioner had the opportunity to challenge the determination of the local medical director at the fair hearing, and to call the admissions nurse for cross-examination.

While petitioner's contention that the integration requirement of the Americans With Disabilities Act (42 USC § 12132; 28 CFR 35.130 [d]) mandates that she continue to receive personal care services at home, the least restrictive setting to satisfy her needs, sets forth a cognizable claim (*see*, *Helen L. v DiDario*, 46 F3d 325, 332-334, *cert denied sub nom. Pennsylvania Secretary of Pub. Welfare v Idell S.*, 516 US 813), a State's obligation "to provide appropriately integrated services is not absolute as the ADA does not require that [a State] make fundamental alterations in its [Medicaid] program" (*supra*, at 336; *see also*, *L.C. v Olmstead*, 138 F3d 893, 904; *cert granted* 525 US 1054, *amended* 525 US 1062; *Southeastern Community Coll. v Davis*, 442 US 397, 410-413; *Alexander v Choate*, 469 US 287, 299-303). Concur—Ellerin, P. J., Sullivan, Lerner and Rubin, JJ.